UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-21364-CIV-HUCK/BANDSTRA

GREGORY L. JOHNSON,

    Plaintiff,

v.

ERIC K. SHINSEKI, *Secretary,*
*Department of Veterans Affairs*,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Gregory L. Johnson, an African-American male, brings this action against Eric K. Shinseki as Secretary, Department of Veterans Affairs ("VA") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Mr. Johnson asserts claims of unlawful race discrimination based on (1) his failure to be promoted, (2) retaliation for filing a complaint of discrimination, and (3) harassment by the Miami Veterans Affairs Healthcare System ("Miami VA"). This matter is presently before the Court on the VA's Motion for Summary Judgment (D.E. # 16), filed March 28, 2012. The VA seeks summary judgment on all of Mr. Johnson's claims. The Court held a hearing on this matter on June 15, 2012. For the reasons discussed below, the Court grants Defendant's Motion for Summary Judgment.

**I.   BACKGROUND**[1]

Mr. Johnson began his employment with the Miami VA Engineering Department in July 1994 as an air-conditioner/refrigeration mechanic, and was ultimately promoted to Utility Systems Repairer/Operator Leader ("USRO Leader") in either 2005 or 2006. Mr. Johnson's

---

[1] Mr. Johnson's Response (D.E. # 17) includes an introduction and summary, and alleges certain facts throughout, but does not contain a statement of material facts as required by Local Rule 56.1(a). Pursuant to Local Rule 56.1(b), "[a]ll material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. R. 56.1(b).

responsibilities as USRO Leader include directing work and providing administrative assistance with work orders, purchase orders, and other preventative maintenance documentation. The USRO Leader is under the direct supervision of the Supervisory Systems Repairer/Operator Leader ("Supervisory USRO"). While the USRO Leader is not considered a supervisory position, Mr. Johnson did, on occasion, serve as Acting Supervisory USRO when that position was vacant. The longest period in which Mr. Johnson recalls serving as Acting Supervisory USRO was a week-and-a-half.

In October 2008, Mr. Johnson applied for a vacant Supervisory USRO position, for which he had applied on two previous occasions. The Miami VA announced the vacancy as a merit promotion. The Miami VA, Department of Human Resources identified both internal applicants (consisting of current VA employees) and external applicants (individuals not employed by the VA) who qualified to fill the position. Mr. Johnson was one of five internal applicants certified by Human Resources. These applicants consisted of three African-Americans, one Hispanic, and one white male. Human Resources only identified one qualified external applicant—Scott Dyer, a white male.

The person responsible for selecting the applicant to fill the vacancy was Selma Rapoport-Zolotas, the Miami VA's Chief of Engineering Services. Edwin Valle, Plant Operations Foreman at the Miami VA and the direct supervisor of the Supervisory USRO, was responsible for making a recommendation to Ms. Rapoport-Zolotas as to whom he believed was most qualified to fill the vacancy. Mr. Valle determined that he did not need to conduct interviews for any of the internal applicants because he was already familiar with their employment histories and job performances.[2] With respect to Mr. Johnson, Mr. Valle initially became Mr. Johnson's supervisor in May 2002, and has since then been either his direct or second-line supervisor. Mr. Valle also interviewed Mr. Johnson for the Supervisory USRO position on a previous occasion.

Mr. Valle ranked the internal applicants on a matrix that included variables for (1) the overall quality of the application, (2) the amount of previous supervisory experience, and (3) a rating by Human Resources. This matrix was used for the first time to fill this vacancy. Mr.

---

[2] The application materials also informed the internal applicants that "This form will be used as the *primary source document* for determining basic qualifications and for rating and ranking purposes. This information [sic] you give on this form will be a main source for evaluating your qualifications and for determining how many points you receive in the rating and ranking process." *See* Application (D.E. # 16-1), at 111 (emphasis in original).

Johnson received an overall score of 68 (of 100), ranking him second behind the leading internal applicant, Don Anderson, an African-American male. Mr. Anderson received a significantly higher score of 92 (of 100). *See* Matrix (D.E. # 16-1), at 115.

Mr. Valle set up a three-member panel to interview the sole external applicant, Scott Dyer. During the interview, the panel asked Mr. Dyer questions regarding mechanical and supervisory matters, and other issues relating to job performance. Following the interview the panel members discussed their impressions of Mr. Dyer and concluded that he was an excellent candidate to fill the Supervisory USRO position. A panel member also contacted several of Mr. Dyer's references, all of whom gave positive feedback regarding Mr. Dyer's previous work performance. Mr. Valle and Ms. Rapoport-Zolotas testified that they were both impressed with Mr. Dyer's application and experience. Mr. Dyer was previously employed by the West Palm Beach VA Medical Center and was generally familiar with VA utility systems. Mr. Dyer also had two-and-a-half years of supervisory experience. Based on his belief that Mr. Dyer was the best applicant, Mr. Valle recommended to Ms. Rapoport-Zolotas that Mr. Dyer be selected to fill the Supervisory USRO position. Based on that recommendation, as well as her own review of all the application packages, Mr. Rapoport-Zolotas concurred that Mr. Dyer was the best applicant, and accordingly selected him to fill the Supervisory USRO position.

The record indicates that Mr. Johnson was formally notified that he was not selected for the Supervisory USRO position on April 22, 2009. However, Mr. Johnson contends that he first learned that he did not receive the position on May 1, 2009 after a conversation with Scott Rogowski, Miami VA Preventative Maintenance Supervisor. After Mr. Johnson learned that he did not receive the promotion, he confronted Mr. Valle about the selection of Mr. Dyer as the new Supervisory USRO. Mr. Johnson alleges that Mr. Valle stated "Scott let the cat out of the bag. I wanted to speak with you guy's [sic] individually." EEO Compl. (D.E. # 16-1), at 100; Johnson Aff. (D.E. # 17-3), at 3. After Mr. Johnson expressed his frustration, Mr. Johnson contends that Mr. Valle stated "listen the individual that was chosen I felt was the best qualified for the job. I know where you all have been and I know where you all are going; if anyone knows you guy's [sic] it's me. if [sic] you are a supervisor you are suppose [sic] to know your men's [sic]." EEO Compl., at 100; Johnson Aff., at 2. Mr. Valle denies making such a statement.

Mr. Johnson submitted an administrative Complaint of Employment Discrimination with the VA Office of Resolution Management ("EEO Complaint"), on July 6, 2009. In his

3

complaint, Mr. Johnson alleges that he was not selected for the Supervisory USRO because of his race and age. In his narrative, Mr. Johnson asserts that his qualifications could not be compared with those of the other applicants because he was not afforded an interview for the position. Mr. Johnson also asserts that African-Americans are subject to disparate treatment in hiring and in the terms and conditions of their employment when compared to their white colleagues. Specifically, he states that "You have cause [sic] a great deal of uneasiness within the work place [sic] as far as trust, honesty and communication. Blacks are seldom hire [sic] and when they are their pay is less than whites or Hispanics in the Engineering division [sic]." EEO Compl., at 98. To support his allegations, Mr. Johnson cites several examples where he believes an African-American employee was passed over for promotion in favor of a white applicant. Mr. Johnson also points to an example where he believes an African-American was hired at a lower pay-grade than a less-experienced white applicant.

On July 15, 2009, the Office of Resolution Management informed Mr. Johnson that his complaint met all relevant procedural requirements and was accepted for further processing. The Office of Resolution Management provided Mr. Johnson with the following summary of his EEO Complaint:

> <u>Claim A</u>: Whether on the bases of race (Black) and age the complainant was treated disparately with regards to non-selection/failure to promote when on or about 4/22/09 the complainant learned that he had not been selected for the position of Supervisory Utility Systems Repair Operator, WS-4742-10, Ann. No: MP-09-73-SJ.

Letter, July 15, 2009 (D.E. # 16-1), at 103 (emphasis in original). The Office of Resolution Management also informed Mr. Johnson that if he did not respond within seven calendar days indicating that the claim was improperly formulated, incomplete, or inaccurate, the VA would assume that the claim was correctly stated. Mr. Johnson admits that the Office of Resolution Management correctly characterized his complaint, and that he did not attempt to modify or supplement his claim. The parties did not inform the Court of the VA's final disposition of Mr. Johnson's EEO Complaint, or any subsequent administrative actions by the VA or the Equal Employment Opportunities Commission (EEOC). As the VA has not contested the propriety of the instant action, the Court assumes, for purposes of the present motion, that the VA either denied or failed to take final action on Mr. Johnson's claim. *See* 42 U.S.C. § 2000e-16(c)

4

("Within 90 days of receipt of notice of final action taken by a department, agency, or unit . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action").

Mr. Johnson initiated the instant action on April 18, 2011. While the Complaint is not separated into separate counts, Mr. Johnson alleges that the Miami VA racially discriminated against him in violation of Title VII based on the Miami VA's failure to promote him to the Supervisory USRO position. Mr. Johnson also makes general allegations that the Miami VA retaliated against him for filing a charge of discrimination, harassed him, and created an "environment of psychological harassment." Compl. (D.E. # 1), ¶ 2(b)-(c). Mr. Johnson did not, however, assert a claim of age discrimination.

In its Motion for Summary Judgment, the VA argues that it is entitled to final summary judgment on all of Mr. Johnson's claims. Specifically, the VA argues that Mr. Johnson cannot demonstrate that the VA's stated reason for promoting Mr. Dyer rather than Mr. Johnson was pretext for racial discrimination. The VA also argues that it is entitled to summary judgment on Mr. Johnson's retaliation and harassment claims because he failed to exhaust his administrative remedies with respect to those claims. For the reasons discussed below, the Court grants the VA's Motion for Summary Judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law, and might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if a rational trier of fact may find for the non-moving party based on the record taken as a whole. *Allen*, 121 F.3d at 646. In determining whether summary judgment is appropriate, facts and inferences from the record are viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1374 (11th Cir. 1996).

The movant bears the initial responsibility of informing the Court of the basis for its motion, and the particular parts of the record demonstrating the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the movant satisfies this burden, "the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id*. (citing *Celotex*, 477 U.S. at 322).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in its favor.  *Shiver*, 549 F.3d at 1343.  If the non-moving party fails to make a sufficient showing on an essential element of the case, or proffers only conclusory allegations, conjecture, or evidence that is merely colorable and not significantly probative, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 322.

## III.     ANALYSIS

### A.     Failure to Promote Claim

Mr. Johnson alleges that he was the victim of racial discrimination by the Miami VA for failing to promote him, in violation of Title VII.  Title VII provides a civil remedy for employees who are victims of discrimination in the workplace by making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Where, as here, a summary judgment motion is before the Court in a Title VII case involving circumstantial evidence, the Court analyzes the case under the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981); *Greer v. Birmingham Beverage Co., Inc.*, 291 F. App'x 943, 944 (11th Cir. 2008); *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).

Under the *McDonnell Douglas* framework, Mr. Johnson must first establish a prima facie case of discrimination by submitting "sufficient evidence to allow a reasonable jury to determine that he has satisfied the elements of his prima facie case." *Greer*, 291 F. App'x at 944 (citing *McDonnell Douglas*, 411 U.S. at 802). To establish a prima facie case of discrimination under Title VII for failure to promote, an employee must show that (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected; and (4) the position was filled by someone outside of his protected class. *Watkins v. Sec'y Dep't of Homeland Sec.*, 401 F. App'x 461, 466 (11th Cir. 2010) (citing *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998)); *see also Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (listing the elements of a failure to promote claim). If Mr. Johnson establishes a prima facie case of discrimination, a rebuttable presumption arises that the Miami VA unlawfully discriminated against him, thereby shifting the burden to the VA "to articulate a legitimate, nondiscriminatory reason for the employment decision." *Greer*, 291 F. App'x at 944 (citing *McDonnell Douglas*, 411 U.S. at 802-03). "If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325-26 (11th Cir. 2011). The employer's articulated reason is legitimate as long as it is honestly and reasonably held. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470-71 (11th Cir. 1991). The burden on the employer to rebut a prima facie case of discrimination is light, requiring only that "the [employer] produce, not prove, a nondiscriminatory reason." *Walker*, 53 F.3d at 1556 (citing *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983)).

If the VA is able to proffer a legitimate, nondiscriminatory reason for its employment decision, the burden then shifts back to Mr. Johnson to show that this reason was pretextual. *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). "It is at this stage that the plaintiff's 'burden . . . merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" *Smith*, 644 F.3d at 1327 (quoting *Burdine*, 450 U.S. at 256). "[I]n order to show pretext, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Goodman v. Georgia Southwestern*, 147 F. App'x 888, 891 (11th Cir. 2005) (citing *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)); *see also Humphrey v. Sears,*

*Roebuck, and Co.*, 192 F. Supp. 2d 1371, 1375-76 (S.D. Fla. 2002). However, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that reason is not sufficient." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) (internal citations omitted); *accord Keaton v. Cobb Co., Ga.*, No. 08-11220, 2009 WL 212097, *3 (11th Cir. 2009) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000)). Although the same evidence used to establish a prima facie case can be used to cast doubt on an employer's proffered motive, "the plaintiff cannot simply stand on her prima facie case; instead, she must convince the court that the evidence in the case as a whole preponderates in favor of a finding of intentional discrimination by the defendant." *Mortham*, 158 F.3d at 1184-85, 1184 n.12.

The VA has properly conceded that Mr. Johnson has established a prima facie case of discrimination: he is a member of a protected class, he was qualified and applied for the promotion, he was rejected, and the position was filled by someone outside of his protected class. *See* Def. Mot. Summ. J., at 9-10. Thus, under the burden-shifting test outlined in *McDonnell Douglas* and its progeny, the VA must offer a legitimate, nondiscriminatory reason for its employment decision. Should the VA meet this burden of production, Mr. Johnson must offer evidence to establish that the VA's reason was merely pretext for discrimination.

The VA has offered a legitimate, nondiscriminatory reason for selecting Mr. Dyer as the Supervisory USRO—that he was the best candidate of all of the applicants. As stated above, the Miami VA's selection process involved evaluating each internal applicant on a matrix with numerical scores assigned for each of these categories: supervisory experience, quality of the application, and a score assigned by human resources. *See* Matrix, at 115. In-person interviews were not held for any of the five internal applicants because the recommending official, Mr. Valle, was familiar with the work of each of the five internal applicants, and determined that in-person interviews were not needed. Valle Decl. (D.E. # 16-3), ¶¶ 3, 8. Mr. Dyer, as the sole external candidate, was afforded an interview by the three-member panel. Mr. Valle and Ms. Rapoport-Zolotas testified that (1) they believed Mr. Dyer was the best candidate for the Supervisory USRO position, and (2) that race was not a factor in their decision. *See* Valle Decl., ¶¶ 14, 16; Rapoport-Zolotas Decl. (D.E. # 16-2), ¶¶ 5, 7.

Mr. Valle and Ms. Rapoport-Zolotas more specifically state that they were impressed with Mr. Dyer's application and supervisory experience. The VA contends that attention to detail and good communication skills are critical because the Supervisory USRO is responsible

8

for drafting numerous reports that are critical for plant operation. The Supervisory USRO is also responsible for supervising twenty four employees. Mr. Valle and Ms. Rapoport-Zolotas assert that Mr. Dyer was the most qualified applicant in light of the responsibilities of the position. Mr. Dyer was previously employed in a supervisory capacity at the Federal Bureau of Prisons, and had two-and-a-half years of supervisory experience. Mr. Dyer had also previously worked at the West Palm Beach VA Medical Center, and was generally familiar with VA facilities. Mr. Valle and Ms. Rapoport-Zolotas also contend that Mr. Dyer had good interpersonal and writing skills. Another member of the interview panel, Henry Cox, contacted several of Mr. Dyer's references, all of whom indicated that Mr. Dyer was an excellent employee. *See* Cox Decl. (D.E. # 16-4), at 2. Mr. Cox even noted on a reference check question sheet that "everyone loves this man." *Id*. at 7. Based on these considerations, Mr. Dyer was hired as the Supervisory USRO by Ms. Rapoport-Zolotas upon the recommendation of Mr. Valle.

In contrast to their opinion of Mr. Dyer, Mr. Valle and Ms. Rapoport-Zolotas contend that Mr. Johnson did not stand out as a candidate for the supervisory position. Mr. Valle opined that, based on his supervision of Mr. Johnson since May 2002, Mr. Johnson lacked the requisite supervisory experience to be the Supervisory USRO, and that Mr. Johnson does not exercise a sufficient level of care with regard to his paperwork that is incumbent of someone seeking a supervisory position. Specifically, Mr. Valle testified that Mr. Johnson's paperwork is not always accurate or properly formatted, and his written communication ability is not at a supervisory level. Valle Decl., ¶ 15. Mr. Rapoport-Zolotas states a similar opinion of Mr. Johnson's work, testifying that "Mr. Johnson did not have the level of communication skills and accuracy which should be required for the Supervisory USRO position . . . he had not exhibited sufficient initiative or ability to address and solve problems in his current position for me to be able to believe that he could handle the supervision of the Utility Plant staff." Rapoport-Zolotas Decl., ¶ 6.

Mr. Johnson alleges that the Miami VA's reason for hiring Mr. Dyer was merely pretext to racial discrimination. Mr. Johnson alleges that pretext can be demonstrated from (1) his qualifications and experience, (2) the Miami VA's failure to interview African-American applicants in violation of union rules, and (3) a general hostility at the Miami VA toward African-Americans. However, none of Mr. Johnson's arguments support a finding that the VA's stated reason for hiring Mr. Dyer—that he was the most qualified applicant—was pretext for racial discrimination.

9

First, Mr. Johnson argues that pretext is evinced by his fifteen years of experience at the Miami VA, and the Outstanding Rating Certificate he received in 2008. *See, e.g.,* Award (D.E. # 17-1), at 1-2; Johnson Aff., at 2. However, evidence that a plaintiff was qualified for a position is rarely sufficient to demonstrate pretext "unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000) (quoting *Deines v. Texas Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999)); *accord Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003); *Rogers-Libert v. Miami-Dade County*, 184 F. Supp. 2d 1273, 1279 (S.D. Fla. 2001). Mr. Johnson asserts that Mr. Dyer had no knowledge of the Miami VA or its equipment. However, Mr. Johnson does not dispute that Mr. Dyer had previous supervisory experience, and had general knowledge of VA facilities from his previous work at the West Palm Beach VA. As the Eleventh Circuit explained in *Alexander v. Fulton County*, a "plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race . . . 'a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer.'" *Alexander*, 207 F.3d at 1339 (quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997)); *see also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 2000) (stating that Title VII does not "require the employer to have good cause for its decisions. The employer may [make an employment decision] for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." (internal citations omitted)). Here, Mr. Johnson has not shown that the VA's employment decision was motivated by race, and has thus not established pretext by showing that he previously received recognition for his job performance.[3]

---

[3] As indicated above, Mr. Johnson did not have the highest score among the internal applicants. The individual who received the highest score of the internal applicants was Don Anderson, an African-American male. Mr. Anderson's score of 92/100 was significantly higher than Mr. Johnson's score of 68/100. The VA has established that Mr. Johnson would not have been hired even if an internal applicant was ultimately chosen to fill the Supervisoty USRO position. Def. Mot. for Summ. J., at 4; Rapoport-Zolotas Decl., ¶ 6; Valle Decl., ¶¶ 9, 15. Mr. Johnson has not offered any contrary evidence.

Second, Mr. Johnson argues that pretext can be evinced from the Miami VA's violation of union rules. According to Mr. Johnson, Mr. Valle elected not to grant interviews to the internal applicants in violation of union rules to purposely avoid three qualified African-American candidates.[4] Johnson Aff., at 3. However, Mr. Johnson cannot extrapolate pretext from the Miami VA's alleged failure to adhere to its union agreement in light of the record in this case.[5] An employer's failure to adhere to internal rules does not necessarily indicate racial discrimination. *Springer*, 509 F.3d at 1350 (citing *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedure does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." (emphasis omitted))). Here, the five internal applicants—consisting of three African-Americans, one Hispanic, and one white—were treated identically in the selection process. Mr. Valle testified that he believed it was not necessary to interview any of the internal applicants because he was already sufficiently familiar with their job performances. All five internal applicants were evaluated based on the matrix categories. Mr. Johnson was not specifically excluded from the interview process, nor were only African-Americans excluded. Moreover, the internal

---

[4] Mr. Johnson also argues that the VA violated union rules because one member of the interview panel, Henry Cox, did not have knowledge of the position. Article 23, Section 10(B)(6) of the Master Agreement between the Department of Veterans Affairs and the American Federation of Government Employees 2011 ("Union Agreement") states that "Members of the [interview] panel *should* be familiar with the job requirements of the position(s) being filled." Union Agreement (D.E. # 17-2), at 13 (emphasis added). Mr. Cox testified that he was asked to substitute for another supervisor who was unable to participate on the interview panel because of a relative's illness. Cox Depo., at 4-5. Mr. Johnson does not elaborate, and the Court does not deduce, how racial motivation can be established from Mr. Cox's participation on the interview panel.

[5] Article 23, Section 10(D)(1)(d) of the Union Agreement provides: "The panel will evaluate each application in order to ascertain the relevancy of the candidate's background . . . ." Union Agreement, at 14. Mr. Johnson offers the declaration of Giselle Aponte, a former executive with American Federation of Government Employees Local 515 to assert that all applicants should have been interviewed by the selection panel. Aponte Decl. (D.E. # 17-6), ¶ 3. The VA argues that the Supervisory USRO position is not a bargaining unit position, and thus the union contract is inapplicable. *See* 5 U.S.C. § 7112(b)(1) (stating that "A [bargaining] unit shall not be determined to be appropriate under this section . . . if it includes . . . any management official or supervisor"). However, the Court does not need to evaluate whether the Union Agreement covers the Supervisory USRO position as discriminatory intent is not evinced by Mr. Valle's decision not to interview *any* internal applicant.

11

applicants were given notice that their evaluation and ranking would be based primarily on their written answers to the application questions. Pretext in this case is not evident from the Miami VA choosing to interview only the external applicant.

Third, Mr. Johnson argues that pretext is demonstrated by a statement made by Mr. Valle, as well as past instances where the Miami VA has failed to promote qualified African-Americans or hired African-Americans at lower pay grades than equally-qualified white applicants. As stated above, Mr. Johnson alleges that Mr. Valle stated told him: "[L]isten the individual that was chosen I felt was the best qualified for the job. I know where you all have been and I know where you all are going; if anyone knows you guy's [sic] it's me. if [sic] you are a supervisor you are suppose [sic] to know your men's [sic]." EEO Compl., at 100; Johnson Aff., at 3. Mr. Johnson asserts that this statement implies that African-American employees under Mr. Valle's supervision do not have an avenue for advancement. Mr. Valle denies making any such statement. However, even if such statement had been made, which the Court assumes it was for the purposes of summary judgment, Mr. Valle's statement does not indicate that his recommendation that Mr. Dyer be selected to fill the Supervisory USRO position was motivated by racial animus.

A comment by a supervisor may be probative circumstantial evidence of a decision-maker's state of mind in light of its substance, context, and timing. *See Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1362 (11th Cir. 1999) (citing *Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) (holding that "language not amounting to direct evidence, but showing some racial animus, may be *significant* evidence of pretext once a plaintiff has set out a prima facie case" (emphasis in original))). Here, Mr. Valle's statement is not probative of racial animus because (1) the statement was made in the context of who Mr. Valle believed was most qualified for the Supervisory USRO position, (2) Mr. Valle was not the final decision-maker with regard to the position, but rather only recommended who he believed should fill the position, and (3) there is nothing in the statement indicating any racial animus.[6]

---

[6] In *Damon*, the Eleventh Circuit found that a manager's statement that he wanted "aggressive *young* men" promoted was highly suggestive circumstantial evidence from which a jury could infer discriminatory intent with respect to the plaintiff's age. *Damon*, 196 F.3d at 1362 (emphasis in original). Unlike the present case, the manager in *Damon* was the final decision-maker who had personally demoted several older workers and replaced them with younger workers during the time period in which the statement was made. Here by contrast, Mr. Valle was not the final hiring authority for the Supervisory USRO position, and his statement was

12

Accordingly, Mr. Valle's statement is insufficient to demonstrate that Mr. Dyer's selection was pretext for racial discrimination.[7]

Mr. Johnson also offers general conclusory testimony that the Miami VA has, in the past, failed to promote qualified African-Americans, and hired African-Americans at lower pay grades. Johnson Aff., at 5 ("African-Americans are treated differently in this Department as related to selection, advancement and compensation.") Mr. Johnson alleges in his EEO Complaint that "a couple of years back" a white employee was given a "second chance" at a supervisory position. EEO Compl., at 98. His EEO Complaint goes on to allege that Don Anderson was hired at a lower pay level than a less-experienced white applicant. *Id*. Mr. Johnson, moreover, alleges that in April 2009, Mr. Valle closed two air condition/refrigeration mechanic vacancies rather than hire African-American applicants. *Id*. at 99. Mr. Johnson offers the declarations of Don Anderson and Edward Houchins in which they opine that African-Americans are subject to discrimination and disparate treatment at the Miami VA. Anderson Decl. (D.E. # 17-4), at 2 (stating "we are routinely denied consideration for advancement in our careers"); Houchins Decl., at 1 (stating "From my observation, black employees in the Utility Systems are treated differently in the workplace than white employees. There is a prejudicial attitude toward black workers as compared to whites. White employees move up the employment promotion ladder more rapidly, and blacks do not.").

While the Court notes that Mr. Johnson has submitted conclusory, non-specific allegations of systematic racial discrimination of minority employees in other contexts, Mr. Johnson has not presented competent evidence demonstrating that the Miami VA's selection of Mr. Dyer was pretext for racial discrimination. "Conclusory allegations of discrimination are insufficient to raise an inference of pretext 'where an employer has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions.'" *Lucas v. Dep't of the Army*, 455 F. App'x 911, 913 (11th Cir. 2012) (quoting *Mayfield*, 101 F.3d at 1376); *see also Celotex*, 477 U.S. at

---

made in the context of who he believed was best qualified for the position. Moreover, the statement in *Damon* suggests a discriminatory bias, while here the statement does not.

[7] In his declaration, Edward Houchins asserts that on one occasion in November 2009 he and Mr. Johnson had investigated the cause of a power outage at the Miami VA, whereupon Ms. Rapoport-Zolotas called for an update as to the situation. When Mr. Houchins asked Ms. Rapoport-Zolotas of she wished to speak to Mr. Johnson regarding the matter, she loudly said "no" and hung up the phone. Houchins Decl. (D.E. # 17-5), at 2. Mr. Johnson again does not elaborate, and the Court does not deduce, how Ms. Rapoport-Zolotas' actions evince racial animus.

322. Here the non-specific opinion testimony of Mr. Johnson, Mr. Anderson, and Mr. Houchins is insufficient to establish pretext by the VA. Similarly, Mr. Johnson's allegations of improper past employment decisions by the Miami VA are not relevant to demonstrating pretext in Mr. Dyer's hiring. Mr. Johnson has failed to rebut the VA's proffered legitimate, nondiscriminatory reasons for hiring Mr. Dyer for the Supervisory USRO position. Accordingly, the VA is entitled to summary judgment on Mr. Johnson's failure to promote claim.

### B. Retaliation and Harassment Claims

While Mr. Johnson makes generalized allegations that the Miami VA retaliated against him for filing a complaint of discrimination and harassment, it is clear from the pleadings that he is not proceeding on any such theory in the instant case. *See* Response, at 1 ("This is a failure-to-hire/promote case"). In his Response, Mr. Johnson does not dispute the VA's assertion that he did not exhaust his administrative remedies as to any allegations of retaliation and harassment. Moreover, a review of Mr. Johnson's EEO documentation indicates that he never alleged specific facts that support any allegation of retaliation or harassment as bases of discrimination. In any event, to the extent that Mr. Johnson is proceeding on claims of retaliation and harassment, the VA is entitled to summary judgment on those claims for failure to exhaust administrative remedies.

### IV. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (D.E. # 16) is GRANTED. The Court will enter a separate order of final judgment and closing the case.

DONE and ORDERED, in Chambers, Miami, Florida, June 20, 2012.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of record